UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BREVARD ORTHOPAEDIC, SPINE             Case No:
PAIN CLINIC, INC., RICHARD HYNES, M.D., DEVIN
DATTA, M.D., and CCSC TBC GROUP, LLC,

         Plaintiffs,

v.

TBC HOLDINGS OF MELBOURNE, INC.; FIRST
CHOICE MEDICAL GROUP OF BREVARD, LLC;
FIRST CHOICE HEALTHCARE SOLUTIONS, INC.;
CCSC HOLDINGS, INC.; CHRISTIAN
ROMANDETTI; KRIS JONES ROMANDETTI;
LEADING EDGE MEDICAL CONSULTING, LLC
a/k/a LEADING MEDICAL SOLUTIONS, LLC; and
PHILLIP J. KELLER,

         Defendants.

_____/

## COMPLAINT

Plaintiffs, BREVARD ORTHOPAEDIC, SPINE & PAIN CLINIC, INC. ("BOSPC"), RICHARD HYNES, M.D. ("DR. HYNES"), DEVIN DATTA, M.D. ("DR. DATTA"), and CCSC TBC GROUP, LLC ("CCSC TBC"), by and through their undersigned attorney, hereby sue Defendants, TBC HOLDINGS OF MELBOURNE, INC. ("TBC HOLDINGS"), FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC ("FIRST CHOICE"), CHRISTIAN ROMANDETTI ("MR. ROMANDETTI"), KRIS JONES ROMANDETTI ("MS. JONES") and LEADING EDGE MEDICAL CONSULTING, LLC a/k/a LEADING MEDICAL SOLUTIONS, LLC ("LEADING EDGE"), PHILLIP J. KELLER ("MR. KELLER"), FIRST CHOICE HEALTHCARE SOLUTIONS, INC. ("FIRST HEALTHCARE"), CCSC HOLDINGS, INC. ("CCSC HOLDINGS"), and allege as follows:

## GENERAL ALLEGATIONS

## JURISDICTION AND VENUE

1.        This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*., raise federal questions.  This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims are so related to the RICO and Securities Exchange Act claims as to form part of the same case or controversy.

2.        Venue is proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have agents, or transact their affairs in this District.

3.        Venue is also appropriate under 18 U.S.C. § 1391 because the Middle District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## THE PARTIES

4.        Plaintiff, BOSPC, is a Florida corporation that maintains its principal place of business in Brevard County, Florida.

5.        Plaintiff, DR. HYNES, is a physician who resides and maintains his principal place of business in Brevard County, Florida.

6.        Plaintiff, DR. DATTA, is a physician who resides and maintains his principal place of business in Brevard County, Florida.

7.        Plaintiff, CCSC TBC, is a Florida limited liability company that maintains its principal place of business in Brevard County, Florida.

8.      Defendant, TBC HOLDINGS, is a Florida corporation that maintains its principal place of business in Brevard County, Florida.

9.      Defendant, FIRST CHOICE, is a Florida limited liability company that maintains its principal place of business in Brevard County, Florida.

10.     Defendant, FIRST HEALTHCARE, is a Delaware corporation that maintains its principal place of business in Brevard County, Florida.

11.     Defendant, MR. ROMANDETTI, is an individual who resides in Brevard County, Florida.

12.     Defendant, MS. JONES, is an individual who resides in Brevard County, Florida.

13.     Defendant, MR. KELLER, is an individual who resides in Brevard County, Florida.

14.     Defendant, CCSC HOLDINGS, is a Florida corporation that maintains its principal place of business in Brevard County, Florida.

15.     Defendant, LEADING EDGE, is a Florida limited liability company that maintains its principal place of business in Brevard County, Florida.


**THE BOSPC/FIRST CHOICE NEGOTIATIONS AND OPERATING AGREEMENT**

16.     BOSPC is a physicians group that provides a range of medical services to the residents of Brevard County.

17.     DR. HYNES is one of the physicians within BOSPC and a Director and owner of BOSPC.  DR. HYNES is also a Director and owner of CCSC TBC.

18.     DR. DATTA is one of the physicians within BOSPC and a Director and owner of BOSPC.  DR. DATTA is also a Director and owner of CCSC TBC.

19.     TBC HOLDINGS is a managed services organization ("MSO") company that provides non-clinical, administrative and practice management services to physician groups and physicians, including BOSPC.

20.     FIRST CHOICE is a non-physician owned medical practice specializing in the area of orthopaedics.  The prior Managing Member of FIRST CHOICE was MR. ROMANDETTI. The current Managing Member of FIRST CHOICE is MR. KELLER.

21.     FIRST HEALTHCARE is the publicly-traded company and is an affiliated company with TBC HOLDINGS and FIRST CHOICE.  MR. ROMANDETTI was the President/CEO of FIRST HEALTHCARE. MR. KELLER is the current CEO and CFO of FIRST HEALTHCARE and acted as the previous CFO during MR. ROMANDETTI's tenure as CEO.

22.     MS. JONES is married to MR. ROMANDETTI.  MR. ROMANDETTI installed MS. JONES the manager/administrator in charge of BOSPC's medical operations known under the fictitious name of "The B.A.C.K. Center."  MS. JONES is also the principal and owner of LEADING EDGE.  LEADING EDGE was, upon information and belief, hired by MR. ROMANDETTI on behalf of the FIRST CHOICE entities to assist in the management and growth of BOSPC d/b/a The B.A.C.K. Center.

23.     Sometime prior to May, 2015, DR. HYNES, on behalf of BOSPC and MR. ROMANDETTI, on behalf of the FIRST CHOICE related entities and MS. JONES, individually and on behalf of LEADING EDGE, began discussing establishing a business relationship and the potential purchase of BOSPC by FIRST CHOICE.

24.     As part of that purchase, DR. HYNES and DR. DATTA, on behalf of BOSPC, and MR. ROMANDETTI, on behalf of the FIRST CHOICE entities, agreed to enter into and did enter into an Operation and Control Agreement wherein FIRST CHOICE would create a management services organization known as TBC HOLDINGS to manage BOSPC's practice.

4

25.     On or about May 1, 2015, BOSPC entered into an Operation and Control Agreement with TBC HOLDINGS whereby TBC HOLDINGS agreed to provide non-clinical, administrative and practice management services to BOSPC in exchange for a fee.  A copy of the parties' contract is attached hereto as Exhibit "A" and is incorporated herein by reference.

26.     That agreement was subsequently amended and the First Amendment to the Operation and Control Agreement was entered on or about December 30, 2016.  A copy of the First Amendment is attached as Exhibit "B" and is incorporated herein by reference.

27.     MS. JONES and, upon information and belief, LEADING EDGE were then hired by the FIRST CHOICE entities to assist in providing non-clinical, administrative and practice management services to BOSPC.

28.     Likewise, MR. KELLER, subsequently joined the FIRST CHOICE entities as CFO and became an active participant in all dealings with BOSPC.

## STOCK WARRANTS AND THE VIE

29.     As part of the consideration for entering into the Operation and Control Agreement, FIRST HEALTHCARE agreed to and did issue certain stock warrants to DR. HYNES and DR. DATTA.  MR. ROMANDETTI, individually and on behalf of the FIRST CHOICE entities, including FIRST HEALTHCARE, made certain misrepresentations regarding the value of FIRST HEALTHCARE's stock. These representations were that the stock was worth substantially more than MR. ROMANDETTI knew it was worth.  These representations were made at a time when MS. JONES and MR. ROMANDETTI knew they were false and MS. JONES, MR. ROMANDETTI and MR. KELLER made these representations in a direct and deliberate attempt to induce DR. HYNES, DR. DATTA and BOSPC to enter into the Management and Control Agreement.  DR. HYNES, DR.

5

DATTA and BOSPC reasonably relied upon these misrepresentations and entered into the Agreement and accepted the stock warrants.

30.     Throughout the relationship and as part of the effort to convince DR. HYNES and DR. DATTA to sell BOSPC to FIRST CHOICE, MR. ROMANDETTI and MS. JONES continued to make these misrepresentations regarding the value of the warrants and FIRST CHOICE's stock. MR. KELLER, once he joined FIRST CHOICE as CFO, participated in and made similar misrepresentations regarding the warrant and stock value.

31.     As will be more particularly described in the paragraphs that follow, MR. ROMANDETTI was actively participating in a fraudulent scheme to manipulate and mislead the public as to the true value of the FIRST CHOICE stock.  MR. ROMANDETTI was subsequently indicted for engaging in what regulators referred to as a "pump and dump" scheme as it relates to the FIRST CHOICE stock.

32.     In a deliberate and planned attempt to facilitate that plan and inflate the value of FIRST CHOICE stock, MR. ROMANDETTI, individually, and on behalf of the FIRST CHOICE entities, convinced DR. HYNES and DR. DATTA to relinquish significant and substantial control of BOSPC to FIRST CHOICE through its subsidiary, TBC HOLDINGS.  This relinquishment of control is more particularly described in the Operating Agreement that has been attached as Exhibit "A."

33.     DR. HYNES, DR. DATTA and BOSPC have now learned that this need for relinquishment of control was so that FIRST CHOICE could classify BOSPC as a "variable interest entity" ("VIE").

34.     This classification by FIRST CHOICE of BOSPC as a VIE was a tremendous benefit to FIRST CHOICE and to MR. ROMANDETTI as it related to his plan.  DR. HYNES, DR. DATTA and BOSPC received no value for this classification.

35.     In or about November, 2018, MR. ROMANDETTI was indicted and charged with felony securities fraud violations due to his active participation in a "pump and dump" securities fraud scheme.  It is alleged that MR. ROMANDETTI was an active participant in falsely inflating the value of FIRST HEALTHCARE's stock to the investors including DR. HYNES, DR. DATTA and BOSPC.

36.     From approximately 2015 through 2019, DR. HYNES and DR. DATTA, on behalf of BOSPC, and MS. JONES, MR. ROMANDETTI and, eventually, MR. KELLER, on behalf of the FIRST CHOICE entities, continued with negotiations toward a purchase of BOSPC by FIRST CHOICE.  During the course of those negotiations, numerous representations were made by MS. JONES, MR. ROMANDETTI, MR. KELLER and others on behalf of the FIRST CHOICE entities related to the value of the stock for FIRST HEALTHCARE.  A large part of the purchase price promised to DR. HYNES and DR. DATTA for their interests in BOSPC was being offered as stock in FIRST HEALTHCARE.

**THE DIVERSION OF ANCILLARY SERVICES**

37.     During the entire time the negotiations were moving toward a purchase of BOSPC, FIRST CHOICE, through TBC HOLDINGS, was continuing to manage BOSPC's practice.

38.     In addition, FIRST CHOICE, through TBC HOLDINGS and with the assistance of MS. JONES and LEADING EDGE, were actively diverting ancillary medical business from BOSPC and its preferred vendors to FIRST CHOICE entities.  The effect was to increase FIRST CHOICE revenues to the detriment of BOSPC and its principals, DR. HYNES and DR. DATTA.

39.     One such ancillary service was the physical therapy services.  Prior to FIRST CHOICE's involvement with BOSPC, BOSPC utilized the services of a physical therapy practice

located within the BOSPC facility.  This physical therapy service was paying rent for the space it was occupying in BOSPC's facility, thereby benefitting BOSPC.

40.     Subsequent to FIRST CHOICE's involvement, MR. ROMANDETTI, MR. KELLER and MS. JONES, individually and through her entity, LEADING EDGE, began diverting physical therapy patients to FIRST CHOICE's in-house physical therapy department.

41.     The diversion of the physical therapy patients to FIRST CHOICE resulted in the physical therapy practice located at BOSPC's facility closing down and vacating BOSPC's facility. As a result, BOSPC suffered substantial losses while FIRST CHOICE enjoyed significant gains.

## THE TAKEOVER AND MISMANAGEMENT OF CRANE CREEK
## SURGERY CENTER BY FIRST CHOICE

42.     It is significant to note that, prior to entering into the Operating Agreement with TBC HOLDINGS, BOSPC had a thriving ancillary services component as part of its business plan.  The action of the Defendants in diverting ancillary services was a direct and deliberate attempt to divert that business, de-value BOSPC and, in essence, force BOSPC to join FIRST CHOICE.

43.     There is a same day surgery center located in the building that houses The B.A.C.K. Center.  The surgery center is known as Crane Creek Surgery Center.

44.     At all pertinent times herein, the surgery center was owned by three separate entities: CCSC TBC GROUP, LLC, whose principals were DR. HYNES and DR. DATTA; CCSC HOLDINGS, INC., whose principals were the FIRST CHOICE entities;  and Nutera Holdings, LLC.

45.     A dispute arose between the former management company and one-third owner of the Crane Creek Surgery Center, Nutera and, as a result, a buy-out of that entity occurred.  MR. ROMANDETTI, on behalf of CCSC HOLDINGS and the FIRST CHOICE entities, convinced CCSC TBC, DR. HYNES and DR. DATTA to permit FIRST CHOICE to purchase out the interests of that third party.

8

46.     MR. ROMANDETTI made numerous representations to DR. HYNES, DR. DATTA and BOSPC in conjunction with this transaction, including, but not limited to, the promise that the CCSC would be structured such that 50% of the Surgery Center profits would be shared with physicians who utilized the center and that MR. ROMANDETTI had confirmed that this plan was STARK compliant and that he had confirmed the STARK compliance with three separate law firms specializing in health care law.

47.     Based upon these representations, BOSPC agreed to CCSC HOLDINGS purchase of Nutera's interest and, indeed, provided a short term loan so the FIRST CHOICE entities, through CCSC HOLDINGS could purchase Nutera's interest.

48.     As a result, CCSC HOLDINGS became a two-thirds owner of the surgery center. In addition, CCSC HOLDINGS took over management of the Crane Creek Surgery Center and was responsible for operations and for distributions from Crane Creek Surgery Center to the entities holding an interest in Crane Creek Surgery Center, including CCSC TBC.

49.     CCSC TBC has discovered that CCSC HOLDINGS has failed to make distributions of all sums due and owing to CCSC TBC since taking over management of the surgery center.  In addition, the promise to share CCSC revenues with physicians has not occurred as promised.

50.     The relationship of the parties and owners of Crane Creek Surgery Center are outlined and delineated in the Second Amended and Restated Operating Agreement for Crane Creek Surgery Center ("Operating Agreement").  A copy of that Operating Agreement is attached as Exhibit "C" and is incorporated herein by reference.

51.     CCSC HOLDINGS has materially and substantially breached the Operating Agreement by not properly managing the surgery center and by failing to make the required distributions to CCSC TBC.

52.   CCSC HOLDINGS has, likewise, been giving favorable treatment to the payment of FIRST CHOICE invoices on cases involving letters of protection and has been fraudulently failing to pay BOSPC providers under those same letters of protection.

## THE TERMINATION AND INTERFERENCE

53.   The purchase negotiations broke down between FIRST CHOICE and BOSPC and a sale and purchase was never consummated by the parties.   The breakdown in negotiations began in or about July, 2018.

54.   In addition, MS. JONES, at the insistence of BOSPC, was terminated as the administrator of BOSPC's business, TBC, in or about July, 2018.  MR. ROMANDETTI, individually and on behalf of the FIRST CHOICE entities, agreed to hire a qualified replacement administrator pursuant to the Operating Agreement, but failed to do so.  As a result, BOSPC stopped paying the administration fee to TBC HOLDINGS.

55.   In or about November, 2018, FIRST CHOICE's CEO, MR. ROMANDETTI, was arrested and charged with securities fraud-related claims.  As a result, and due to a myriad of other breaches of the Operating Agreement, BOSPC immediately terminated its contract with TBC HOLDINGS and took control of the operations at BOSPC.

56.   During the negotiation process, BOSPC's electronic medical records ("EMR") were merged with FIRST CHOICE's EMR system.  BOSPC converted its prior EMR system to the EMR system provided by AthenaHealth, Inc. ("Athena").

57.   FIRST CHOICE and TBC HOLDINGS, in their role as the MSO company for BOSPC, registered BOSPC with Athena.

58.   Although the EMR systems for BOSPC and FIRST CHOICE had been merged, the parties' respective EMR systems have since been, and are currently, separated.

59.     Although BOSPC has set up its own EMR system, only new patients are being entered into BOSPC's new EMR system.  BOSPC's existing patients' medical records are still maintained in the Athena EMR system, which system requires FIRST CHOICE's authorization for BOSPC's access to its own patients' records.

60.     Athena, therefore, requires FIRST CHOICE to authorize BOSPC's access to BOSPC's patients' electronic medical records.

61.     BOSPC is committed to paying all costs associated with its access to BOSPC's patients' medical records through the Athena system.

62.     After initially refusing access,  FIRST CHOICE has finally authorized BOSPC to access the Athena EMR system.

63.     Upon information and belief, FIRST CHOICE has been improperly accessing BOSPC's patient records and contacting BOSPC patients to schedule certain ancillary services to be provided by FIRST CHOICE.  This has resulted in the diversion of patient services from BOSPC providers to FIRST CHOICE providers.  This conduct is also a clear violation of HIPPA.

64.     When FIRST CHOICE/TBC HOLDINGS switched The B.A.C.K. Center to Athena, they failed to ensure that BOSPC's contract with its prior medical EMR services provider was cancelled and, as a result, BOSPC has been compelled to pay for services it never received. MS. JONES and LEADING EDGE, of course, were actively involved in this aspect of the management of BOSPC's practice.

**THE DEFENDANTS' FRAUDULENT CONSPIRACY**

65.     As indicated earlier, in or about November, 2018, MR. ROMANDETTI was indicted and charged with felonies related to "pumping and dumping" FIRST HEALTHCARE stock.  As a

result, he was removed as the CEO and President of the FIRST CHOICE entities and, further, from any management responsibilities related to those entities.

66.    At all pertinent times herein, MR. ROMANDETTI was misrepresenting the value of FIRST HEALTHCARE stock to DR. HYNES and DR. DATTA and was knowingly and/or negligently misrepresenting the value of that stock to induce DR. HYNES and DR. DATTA to enter into and sell their interest in BOSPC to FIRST CHOICE. MR. KELLER, MS. JONES and LEADING EDGE were active participants in this fraudulent scheme. Furthermore, MR. ROMANDETTI, MR. KELLER, FIRST CHOICE and FIRST HEALTHCARE classified BOSPC as a VIE in furtherance of its scheme to inflate the value of FIRST HEALTHCARE's stock.

67.    At all pertinent times herein, MR. ROMANDETTI and MR. KELLER were acting on behalf of and at the behest of the FIRST CHOICE entities and within the course and scope of their employment with the FIRST CHOICE entities.  MS. JONES was, likewise, individually, and on behalf of LEADING EDGE, active in the conspiracy to perpetrate this fraud upon BOSPC, DR. HYNES and DR. DATTA.

68.    Since terminating its relationship with the FIRST CHOICE entities, the PLAINTIFFS have learned about other fraudulent actions taken by the Defendants.  These actions include, but are not limited to, the following: registering the The B.A.C.K. Center fictitious name without the PLAINTIFFS' permission; misrepresenting the offer made by Health First to settle an anti-trust lawsuit in order to convince BOSPC to settle the lawsuit for substantially less than expected so FIRST CHOICE could get Health First to add BOSPC to the Health First Health Plan insurance pool to benefit FIRST CHOICE; and continuing its efforts to divert ancillary services and otherwise take business from BOSPC.

## THE DEFENDANTS' MISMANAGEMENT OF BOSPC

69.     During the time that TBC HOLDINGS and/or FIRST CHOICE and/or MS. JONES
and LEADING EDGE were managing BOSPC's practice, they materially and substantially breached
their obligations to properly and effectively manage the practice.  In addition, they engaged in
various acts of self-dealing as it related to the practice.

70.     Among other things, TBC HOLDINGS/FIRST CHOICE overcharged BOSPC for
management costs that should have been absorbed by TBC HOLDINGS/FIRST CHOICE,
damaged and/or retrofitted BOSPC's facilities to benefit FIRST CHOICE, occupied BOSPC's
spaces without paying rent, diverted patients from the physical therapy group to FIRST CHOICE's
physical therapy practice thereby causing BOSPC to lose sub-lease revenue, overcharging for
costs and expenses of the practice that caused substantial income loss to DR. HYNES and DR.
DATTA, received income from newly hired physicians while improperly charging all those
physicians' expenses to BOSPC, engaged in self-dealing in handling letters of protection payoffs
(LOP payoffs), engaged in self-dealing by referring DME, MRI and lab services in-house and away
from BOSPC preferred providers, utilized BOSPC offices for FIRST CHOICE physicians without
paying rent or other practice expenses, redirected motor vehicle accident patients from BOSPC to
FIRST CHOICE, failed to turn over income received and to otherwise properly collect for medical
services and failing to supply a competent administrator for the practice.

71.     The FIRST CHOICE entities also engaged in self-dealing and mismanagement by
having all of the physician and non-physician providers who joined BOSPC and whose costs of
recruitment and all expenses were paid by BOSPC, sign FIRST CHOICE contracts.

72.     All of this mismanagement was designed to make BOSPC, DR. HYNES and DR.
DATTA more dependent on FIRST CHOICE related entities and, in essence, force DR. HYNES

and DR. DATTA to sell BOSPC to FIRST CHOICE  in exchange for the fraudulently valued stock warrants offered by FIRST CHOICE.

## THE SPECIFIC CLAIMS

73.     All conditions precedent to maintaining this action have been met, been excused, been waived or have otherwise occurred.

74.     The PLAINTIFFS have engaged the services of the undersigned attorney and is obliged to pay him a reasonable fee for said services.

75.     The PLAINTIFFS are entitled to recover their attorneys' fees once they prevails in this cause.

## COUNT I:  ACTION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

76.     This is an action seeking both temporary and permanent injunctive relief as to BOSPC's access to the Athena EMR system.

77.     The PLAINTIFFS reallege and incorporate the allegations contained in Paragraphs 1 through 69 above as if fully set forth herein.

78.     As is more particularly described in the preceding paragraphs, BOSPC entered into a management contract with TBC HOLDINGS whereby TBC HOLDINGS agreed to provide non-clinical, administrative and practice management services to the PLAINTIFFS.

79.     Also as is more particularly described above, FIRST CHOICE and BOSPC entered into negotiations for FIRST CHOICE's purchase of BOSPC.  During that negotiation process, FIRST CHOICE and/or TBC HOLDINGS registered BOSPC with the Athena EMR system.

80.     Therefore, FIRST CHOICE and/or TBC HOLDINGS owe both fiduciary and contractual duties to the PLAINTIFFS, including duties owed with respect to BOSPC's EMR system with Athena.

81.     The PLAINTIFFS have, after a substantial delay and threats by FIRST CHOICE, been given access to its existing patients' charts in the Athena EMR system.

82.     The PLAINTIFFS are concerned, however, that FIRST CHOICE may, once again, take away that access.

83.     Pursuant to Florida law, the PLAINTIFFS are entitled to temporary and permanent injunctive relief directing FIRST CHOICE to continue to authorize BOSPC's access to BOSPC's own patient records maintained in the Athena EMR system and enjoining FIRST CHOICE from withdrawing or canceling that authorization pending the Court's determination as to the liability of FIRST CHOICE  or further Order of this Court.

84.     The PLAINTIFFS have suffered and will continue to suffer irreparable harm from FIRST CHOICE's breach of its fiduciary and contractual duties, including the inability of the PLAINTIFFS to access the electronic medical records of BOSPC's own patients, for which the PLAINTIFFS are without an adequate remedy at law.

85.     The issuance of an immediate injunction directing FIRST CHOICE to authorize the PLAINTIFFS' access to their own patient records maintained in the Athena EMR system and restraining FIRST CHOICE from withdrawing or canceling that authorization without further Order of this Court, is proper to preserve the status quo, to maintain the continuity of care for the PLAINTIFFS' patients, and to protect the PLAINTIFFS' patients, their privacy, and the privacy and confidentiality of their protected health information ("PHI").

86.     The PLAINTIFFS have a clear legal right to the relief requested herein, given the fact that  FIRST CHOICE owes both fiduciary and contractual duties to the PLAINTIFFS with respect to the administrative and practice management of the PLAINTIFFS by FIRST CHOICE,

including maintaining and granting, and maintaining access to, BOSPC's EMR system through Athena.

87.     The PLAINTIFFS have a substantial likelihood of success on the merits, and the injury to the PLAINTIFFS and their medical patients outweighs any possible harm to FIRST CHOICE.

88.     The granting of the relief requested herein will serve the public interest and will not be contrary to the public interest.  In particular, the public good is served by protecting and preserving the continuity of care for medical patients and by protecting medical patients, their privacy, and the privacy and confidentiality of their protected health information ("PHI").

WHEREFORE, the PLAINTIFFS respectfully request that the Court issue a temporary and permanent injunction:

–       Directing FIRST CHOICE to continue to authorize the PLAINTIFFS' access to the PLAINTIFFS' own patient records maintained in the Athena EMR system;

–       Enjoining FIRST CHOICE from withdrawing or canceling that authorization pending the Court's determination as to the liability of FIRST CHOICE or further Order of the Court;

-       Enjoining FIRST CHOICE from accessing BOSPC's patient records without authorization;

–       Granting attorneys' fees and costs in favor of the PLAINTIFFS and against FIRST CHOICE and/or TBC HOLDINGS;  and

–       Granting such other and further relief as this Court deems just and proper.

## COUNT II:  BREACH OF CONTRACT

89.     This is an action for damages in excess of $75,000.00.

90.     BOSPC realleges and incorporates the allegations contained in Paragraphs 1 through 69 above as if fully set forth herein.

91.     As is more particularly described in the preceding paragraphs, BOSPC and TBC HOLDINGS entered into a management contract, a copy of which is attached as Exhibit "A."

92.     BOSPC fully performed its obligations pursuant to the contract.

93.     TBC HOLDINGS, on the other hand, has materially and substantially breached the contract by failing to fulfill its obligations pursuant to the contract as is more particularly described in the preceding paragraphs.

94.     As a direct and proximate result of this breach of contract, BOSPC has suffered damages.

WHEREFORE, Plaintiff, BOSPC, demands judgment in their favor and against Defendant, TBC HOLDINGS, for damages, pre- and post-judgment interest, costs, attorney's fees, and for such other and further relief as this Court deems just and proper.


## COUNT III: FRAUD IN THE INDUCEMENT

95.     This is an action for damages in excess of $75,000.00 and is being brought by BOSPC, DR. HYNES and DR. DATTA against MS. JONES, LEADING EDGE, MR. ROMANDETTI, FIRST CHOICE and FIRST HEALTHCARE.

96.     The Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-69.

97.     As is more particularly described in the preceding paragraphs, BOSPC, DR. HYNES and DR. DATTA began negotiations with MR. ROMANDETTI and MS. JONES, on behalf of all the Defendants for FIRST CHOICE, to first enter into the Management and Control Agreement and also to purchase BOSPC.

98.     In conjunction with and as part of that process, DR. HYNES, DR. DATTA and BOSPC agreed to enter into the Management Agreement with TBC HOLDINGS and to continue to negotiate for the sale of BOSPC to FIRST CHOICE.  As part of the consideration for the

Management Contract, FIRST HEALTHCARE issued stock warrants to DR. HYNES and DR. DATTA.

99.     During the course of those negotiations, MS. JONES and MR. ROMANDETTI on behalf of the FIRST CHOICE entities, made numerous and repeated representations regarding the value of the stock in FIRST HEALTHCARE.  This stock was a large part of the purchase price being discussed during the negotiations and was part of the consideration paid for the Management and Control Agreement.

100.     At the time that MS. JONES and MR. ROMANDETTI, on behalf of the FIRST CHOICE entities, were making these representations regarding the value of the FIRST HEALTHCARE stock, MR. ROMANDETTI and MS. JONES  knew the representations were false and misleading.

101.     MS. JONES and MR. ROMANDETTI, on behalf of the FIRST CHOICE entities, made these representations in a direct and deliberate attempt to induce DR. HYNES, DR. DATTA and BOSPC to enter into and to continue to operate under the Management Agreement, to make decisions related to the management of the practice with the goal of ultimately joining FIRST CHOICE and to continue to persuade DR. HYNES, DR. DATTA and BOSPC to accept charges being charged by the FIRST CHOICE entities and make practice decisions based upon an ultimate purchase by FIRST CHOICE of BOSPC.

102.     The representations made by MS. JONES and MR. ROMANDETTI, on behalf of the FIRST CHOICE entitles were made prior to May, 2015 and continuing through at least July/August of 2018 and included statements regarding the trading value of FIRST HEALTHCARE stock, a value that MR. ROMANDETTI and MS. JONES knew was falsely inflated.[1]

---

[1] MR. KELLER started participating in this plan to induce the PLAINTIFFS to continue to generate under the agreement and, ultimately, accept stock as part of the purchase price after he came on board with the FIRST CHOICE entities as CFO.

103.    MS. JONES, MR. ROMANDETTI and MR. KELLER, on behalf of the FIRST CHOICE entities, made these misrepresentations in a direct and deliberate effort to induce DR. HYNES, DR. DATTA and BOSPC into entering and continuing to operate under the Practice Management Agreement and to sell their interest in BOSPC to FIRST CHOICE.

104.    The Plaintiffs reasonably relied upon these misrepresentations.

105.    As a direct and proximate result of this fraudulent conduct, DR. HYNES, DR. DATTA and BOSPC have suffered damages, including, but not limited to, lost revenue, lost business opportunities, lost profits, additional operating expenses and other significant economic damages.

WHEREFORE, Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, demand judgment in their favor and against the Defendants for damages, pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.


## COUNT IV: NEGLIGENT MISREPRESENTATION

106.    This is an action for damages in excess of $75,000.00 and is being brought by BOSPC, DR. HYNES and DR. DATTA against MS. JONES, MR. ROMANDETTI, MR. KELLER, FIRST CHOICE and FIRST HEALTHCARE.

107.    The Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-69.

108.    As is more particularly described in the preceding paragraphs, BOSPC, DR. HYNES and DR. DATTA began negotiations with MS. JONES and MR. ROMANDETTI, on behalf of all the Defendants for FIRST CHOICE, to enter into the Management and Control Agreement and to purchase BOSPC.

109.    During the course of those negotiations, MS. JONES and MR. ROMANDETTI, on behalf of the FIRST CHOICE entities, made numerous and repeated representations regarding the value of the stock in FIRST HEALTHCARE.  This stock was a large part of the purchase price

being discussed during the negotiations and was part of the consideration paid for the Operation and Control Agreement.

110.    At the time that MS. JONES, MR. ROMANDETTI and MR. KELLER, on behalf of the FIRST CHOICE entities, were making these representations regarding the value of the FIRST HEALTHCARE stock, MS. JONES, MR. ROMANDETTI and, ultimately, MR. KELLER believed the statements to be true when, in fact, the statements were false.

111.    The representations made by MS. JONES and MR. ROMANDETTI and, later, MR. KELLER, on behalf of the FIRST CHOICE entitles were made prior to May, 2015 and continued through at least July/August of 2018 and included statements regarding the trading value of FIRST HEALTHCARE stock.[2]

112.    MS. JONES, MR. ROMANDETTI and MR. KELLER should have know that the statements were false.

113.    The Plaintiffs relied upon these misrepresentations and that reliance was justifiable.

114.    The misrepresentations made by MS. JONES, MR. ROMANDETTI and MR. KELLER, on behalf of the FIRST CHOICE entities, caused  DR. HYNES, DR. DATTA and BOSPC to continue to operate under the Management Agreement, to make decisions related to entering into the Management and Control Agreement, to the management of the practice with the goal of ultimately joining FIRST CHOICE and to continue to persuade DR. HYNES, DR. DATTA and BOSPC to accept charges being charged by the FIRST CHOICE entities and make practice decisions based upon an ultimate purchase by FIRST CHOICE of BOSPC.

115.    As a direct and proximate result of these misrepresentations, DR. HYNES, DR. DATTA and BOSPC have suffered damages, including, but not limited to, lost revenue, lost

---

[2]  MR. KELLER started participating in this plan to induce the PLAINTIFFS to continue to generate under the agreement and, ultimately, accept stock as part of the purchase price after he came on board with the FIRST CHOICE entities as CFO.

business opportunities, lost profits, additional operating expenses and other significant economic damages.

WHEREFORE, Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, demand judgment in their favor and against the Defendants for damages, pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

## COUNT V: NEGLIGENCE

116.    This is an action for damages in excess of $75,000.00 and is being brought by BOSPC, DR. HYNES and DR. DATTA against MS. JONES, LEADING EDGE, MR. ROMANDETTI, MR. KELLER, TBC HOLDINGS, FIRST CHOICE and FIRST HEALTHCARE.

117.    The Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-69.

118.    As is more particularly described in the preceding paragraphs, TBC HOLDINGS, FIRST CHOICE, MS. JONES, LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE undertook the task of managing BOSPC's practice.

119.    In undertaking this task, TBC HOLDINGS, FIRST CHOICE, MS. JONES, LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE owed a duty, or obligation that required the Defendants to conform to a certain standard of conduct.

120.    TBC HOLDINGS, FIRST CHOICE, MS. JONES, LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE failed to conform to this duty by overcharging BOSPC for management costs that should have been absorbed by TBC HOLDINGS/FIRST CHOICE, damaging and/or retrofitted BOSPC's facilities to benefit FIRST CHOICE, occupying BOSPC's spaces without paying rent, diverting patients from the physical therapy group (Cora or physical therapy) to FIRST CHOICE's physical therapy practice thereby causing BOSPC to lose a lease with Cora, overcharging for costs and expenses of the practice that

caused substantial income loss to DR. HYNES and DR. DATTA, engaging in self-dealing in handling letters of protection payoffs (LOP payoffs), failing to turn over income received and to otherwise properly collect for medical services, and by failing to grant access to BOSPC's existing patients' charts in the Athena EMR system.

121.    There is a reasonably close causal connection between the above-described non-conforming conduct and the resulting injury to Plaintiffs.

122.    The Plaintiffs have suffered damages and losses due to TBC HOLDINGS, FIRST CHOICE, MS. JONES, LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE's breach of their legal duty.

WHEREFORE, Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, demand judgment in their favor and against the Defendants for damages, pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.


**COUNT VI:  VIOLATION OF THE FLORIDA RICO ACT**

123.    This is an action for damages for violation of the Florida RICO (Racketeer Influenced and Corrupt Organization) Act, section 895.01, *et seq.*, Florida Statutes, and is being brought by BOSPC, DR. HYNES and DR. DATTA against MR. ROMANDETTI, MR. KELLER, TBC HOLDINGS, FIRST CHOICE, FIRST HEALTHCARE, MS. JONES, and LEADING EDGE.

124.    Beginning in or about May 2015 and continuing through at least July/August 2018, Defendants, MS. JONES, MR. ROMANDETTI and, eventually, MR. KELLER, on behalf of the FIRST CHOICE entities, engaged in an ongoing course of, and conducted a pattern of, criminal activity in violation of Chapter 517, Florida Statutes, by making certain misrepresentations regarding stock values for FIRST HEALTHCARE, the values of warrants provided to DR. HYNES and DR. DATTA, and the value of certain considerations provided to BOSPC.

125.    Defendants, MS. JONES, MR. ROMANDETTI, and MR. KELLER, on behalf of the FIRST CHOICE entities, knowingly and willfully engaged in a continuing course of conduct and allowed the misrepresentations on more than two separate incidents with the common purpose and intent to violate section 517.301, Florida Statutes, and to induce DR. HYNES and DR. DATTA to enter into the Management and Control Agreement with TBC HOLDINGS and to sell their interest in BOSPC to FIRST CHOICE.

126.    Plaintiffs, BOSPC, DR. HYNES, and DR. DATTA did rely upon the misrepresentations by entering into the Management and Control Agreement, for which stock in FIRST HEALTHCARE was paid as part of the consideration, and by continuing to operate under the Management and Control Agreement, to make decisions related to the management of the practice with the goal of ultimately joining FIRST CHOICE, to accept charges being charged by the FIRST CHOICE entities, and to make practice decisions based upon an ultimate purchase of BOSPC by FIRST CHOICE.

127.    Plaintiffs do not know the full extent of their damages that are a direct and proximate result from Defendants' wrongful conduct, but Plaintiffs have suffered damages, including, but not limited to, lost revenue, lost business opportunities, lost profits, additional operating expenses, and other significant economic damages.

WHEREFORE, Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, demand judgment in their favor and against the Defendants for damages, pre- and post-judgment interest, costs and for such other and further relief as this Court deems just and proper.

## COUNT VII:  VIOLATION OF FEDERAL RICO, 18 U.S.C. § 1962(c)

128.    This is an action for damages for violation of 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and is being brought

23

by BOSPC, DR. HYNES and DR. DATTA against MR. ROMANDETTI, MR. KELLER, TBC HOLDINGS, FIRST CHOICE, FIRST HEALTHCARE, MS. JONES, and LEADING EDGE.

129.    The FIRST CHOICE entities are an ongoing "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engage in activities that affect interstate commerce.

130.    Defendants, MS. JONES, MR. ROMANDETTI, and MR. KELLER are associated with the FIRST CHOICE entities and have knowingly conducted and/or participated, directly or indirectly, in the conduct of the FIRST CHOICE entities' affairs through a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), consisting of repeated violations of Rule 10b-5 of the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5, in violation of 18 U.S.C. § 1962(c).

131.    The FIRST CHOICE entities were created and/or used as a tool to carry out the scheme and pattern of racketeering activity.

132.    Beginning in or about May 2015 and continuing through at least July/August 2018, Defendants, MS. JONES, MR. ROMANDETTI and, eventually, MR. KELLER, on behalf of the FIRST CHOICE entities, committed or aided and abetted the commission of at least two acts of racketeering activity within the past 10 years, to wit:  violation of 17 C.F.R. § 240.10b-5.  The multiple acts of racketeering activity that Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other and constituted a "pattern of racketeering activity."

133.    Defendants  engaged in an ongoing course of, and conducted a pattern of, criminal activity under the Securities Exchange Act of 1934 by making certain misrepresentations regarding stock values for FIRST HEALTHCARE, the values of warrants provided to DR. HYNES and DR. DATTA, and the value of certain considerations provided to BOSPC, in order to induce DR. HYNES and DR. DATTA to enter into the Management and Control Agreement with TBC HOLDINGS and to sell their interest in BOSPC to FIRST CHOICE.

24

134.     Plaintiffs, BOSPC, DR. HYNES, and DR. DATTA have been injured in their business or property by reason of Defendants' violations of 18 U.S.C. § 1962, including by entering into the Management and Control Agreement, for which stock in FIRST HEALTHCARE was paid as part of the consideration, and by continuing to operate under the Management and Control Agreement, to make decisions related to the management of the practice with the goal of ultimately joining FIRST CHOICE, to accept charges being charged by the FIRST CHOICE entities, and to make practice decisions based upon an ultimate purchase of BOSPC by FIRST CHOICE.

135.     Plaintiffs, BOSPC, DR. HYNES, and DR. DATTA's, injuries were directly and proximately caused by Defendants' racketeering activity.

136.     Defendants knew and intended that Plaintiffs, BOSPC, DR. HYNES, and DR. DATTA, would rely on the scheme's misrepresentations and omissions.

137.     Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, are entitled to bring this action and to recover their treble damages, the costs of bringing this suit, and reasonable attorneys' fees.  Defendants are liable to Plaintiffs for three times their actual damages as proved at trial plus interest and attorneys' fees.

WHEREFORE, Plaintiffs, BOSPC, DR. HYNES and DR. DATTA, demand judgment in their favor and against the Defendants for actual damages, treble damages, pre- and post-judgment interest, costs, attorneys' fees, and for such other and further relief as this Court deems just and proper.

## COUNT VIII: BREACH OF FIDUCIARY DUTY

138.     This is an action for damages in excess of $75,000.00 and is being brought by CCSC TBC against CCSC HOLDINGS.

139.    CCSC TBC realleges and incorporate the allegations contained Paragraphs 1-69 above.

140.    As is more particularly described above, CCSC HOLDINGS, as the majority owner, owned a fiduciary duty to CCSC TBC.

141.    The duty included the duty to deal fairly and honestly and to not self-deal.

142.    As part of that duty CCSC HOLDINGS was responsible and required to make distributions to CCSC TBC.

143.    CCSC HOLDINGS breached its fiduciary duty to CCSC TBC by failing to make the required distributions to CCSC TBC and, misappropriating those funds for its own use.

144.    As a direct and proximate result of this material and substantial breach of fiduciary duty, CCSC TBC has suffered damages in excess of $75,000.00.

WHEREFORE, CCSC TBC demands judgment in its favor for damages, costs and such other and further relief as this Court deems just and proper.


## COUNT IX:  BREACH OF CONTRACT - CCSC OPERATING AGREEMENT

145.    This is an action for damages in excess of $75,000.00.

146.    CCSC GROUP hereby sues CCSC HOLDINGS and realleges and incorporates the allegations contained in Paragraphs 1-69 above as if fully set forth herein.

147.    As is more particularly described in the preceding paragraphs, CCSC GROUP and CCSC HOLDINGS entered into the Operating Agreement contract attached as Exhibit "C."

148.    CCSC TBS has fully complied with all of its obligations pursuant to the contract.

149.    CCSC HOLDINGS, on the other hand, has materially and substantially breached the Operating Agreement contract by failing to properly account, by failing to make proper

distributions and by mismanaging the surgery center.  Each of these breaches is material and substantial.

150.    As a direct and proximate result of this breach of contract by CCSC HOLDINGS, CCSC TBC has suffered damages in excess of $75,000.00.

WHEREFORE, CCSC TBC demands judgment in its favor for damages, costs, attorney's fees, pre- and post-judgment interest and such other and further relief as this Court deems just and proper.

## COUNT X: VIOLATION OF FLORIDA SECURITIES LAW

151.    This is an action being brought against MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE for damages in excess of $75,000.00.

152.    DR. HYNES, DR. DATTA and BOSPC reallege and incorporate the allegations contained in Paragraphs 1-69 above as if fully set forth herein.

153.    As indicated in the preceding paragraphs, certain misrepresentations were made regarding stock values and the values of warrants provided to DR. HYNES and DR. DATTA.  In addition, certain considerations being provided to BOSPC.

154.    These express misrepresentations are identified in the general allegations that have been realleged and incorporated into this Count of the Complaint.

155.    The above-described conduct is a clear violation of Fla. Stat. § 517.301 and constitutes actionable securities fraud due to the fact that MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI and MR. KELLER employed a device, scheme, or artifice to defraud in connection with the sale or purchase of securities, has obtained money or property through material misrepresentations or omissions in connection with the sale or purchase of

securities, and has engaged in a transaction, practice, or course of business which has operated as a fraud or deceit upon DR. HYNES, DR. DATTA and BOSPC, and which constitutes a violation of section 517.301, Florida Statutes.

156.    As a direct and proximate result of this conduct by MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI, MR. KELLER AND FIRST HEALTHCARE, DR. HYNES, DR. DATTA and BOSPC have suffered damages in excess of $75,000.00.

157.    DR. HYNES, DR. DATTA and BOSPC expressly reserve their right to amend this claim and seek punitive damages once a proper proffer has been made.

WHEREFORE, DR. HYNES, DR. DATTA and BOSPC demand judgment in their favor for damages, costs, attorneys' fees, pre- and post-judgment interest and such other and further relief as this Court deems just and proper.

## COUNT XI: VIOLATION OF FEDERAL SECURITIES LAW

158.    This is an action being brought against MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI, MR. KELLER and FIRST HEALTHCARE for damages in excess of $75,000.00.

159.    DR. HYNES, DR. DATTA and BOSPC reallege and incorporate the allegations contained in Paragraphs 1-69 above as if fully set forth herein.

160.    As indicated in the preceding paragraphs, certain misrepresentations were made regarding stock values and the values of warrants provided to DR. HYNES and DR. DATTA.  In addition, certain considerations being provided to BOSPC.

161.    These express misrepresentations are identified in the general allegations that have been realleged and incorporated into this Count of the Complaint.

162.   The above-described conduct is a clear violation of 17 C.F.R. § 240.10b-5 and constitutes actionable securities fraud due to the fact that MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI and MR. KELLER: 1) employed a device, scheme, or artifice to defraud; 2) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or 3) engaged in acts, practices or a course of business which operates or would operate as a fraud or deceit upon any person upon DR. HYNES, DR. DATTA and BOSPC, and which constitutes a violation of section 240.10b-5.

163.   As a direct and proximate result of this conduct by MS. JONES, individually, and on behalf of LEADING EDGE, MR. ROMANDETTI, MR. KELLER AND FIRST HEALTHCARE, DR. HYNES, DR. DATTA and BOSPC have suffered damages in excess of $75,000.00.

164.   DR. HYNES, DR. DATTA and BOSPC expressly reserve their right to amend this claim and seek punitive damages once a proper proffer has been made.

WHEREFORE, DR. HYNES, DR. DATTA and BOSPC demand judgment in their favor for damages, costs, attorneys' fees, pre- and post-judgment interest and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

WHEREFORE, the Plaintiffs, demand judgment in their favor for damages, costs and such other and further relief as this Court deems just and proper.

Dated: September 10, 2019.       **FRESE, WHITEHEAD & ANDERSON, P.A.**


By:    /s/ Allan P. Whitehead
          Allan P. Whitehead
          Florida Bar No.  870927
          Erika J. McBryde
          Florida Bar No. 414794
          2200 Front Street, Suite 301
          Melbourne, FL  32901
          Telephone: 321.984.3300; Facsimile: 321.951.3741
          awhitehead@fresewhitehead.com
          emcbryde@fresewhitehead.com
          Attorneys for Plaintiffs

I:\Allan\Hynes\FCMG 219-0096\complaint 091119.wpd